IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  19-10003-JWB |
| ) | |
| CHRISTOPHER W. O'BRIEN, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

This matter comes before the court on Defendant Christopher O'Brien's motion for sentence reduction and release from custody. (Doc. 26.) The motion has been fully briefed and the court is prepared to rule. (Docs. 28, 29, 30, 31.) For the reasons stated herein, Defendant's motion is denied.

**I.   Facts and Procedural History**

On January 23, 2019, Defendant was charged by information with three counts of embezzlement against an estate pursuant to 18 U.S.C. § 153. (Doc. 1.) On March 18, 2019, a superseding information was filed alleging similar charges but only contained two counts. (Doc. 9.) Defendant waived indictment and pled guilty to count 1 of the superseding information. (Doc. 13.)  At the plea hearing, Defendant admitted that he was an attorney for debtors Roger and Marci Altis in a bankruptcy proceeding.  From February 2011 to December 2014, Defendant knowingly and fraudulently appropriated to his own use approximately $132,447.31 belonging to the debtors. During that same time period, Defendant also stole money from several other clients.  Defendant admitted to converting almost one million dollars for his own personal use.  This included more

1

than $500,000 of client funds from another matter in which Defendant represented a debtor in bankruptcy. This also included thousands of dollars paid to him after fourteen retirees hired Defendant to file a proof of claim in the Hawker Beechcraft Chapter 11 bankruptcy. (Doc. 16 at 5-11.)

Based on Defendant's total offense level and criminal history category of I, the guideline imprisonment range was 46 to 57 months. Defendant filed a sentencing memorandum and sought probation or home confinement. (Doc. 19.) Defendant's request was based on the fact that he brought his criminal conduct to light when he self-reported to the Kansas disciplinary administrator in 2015, that he had been rehabilitated since that time, and he suffered from various health conditions that had required hospitalization. Ultimately, the court did vary downward and sentenced Defendant to 36 months. The court also ordered restitution to Defendant's victims in the amount of $603,841.31. (Doc. 21.) The court allowed Defendant to self-surrender.

Defendant was designated to the Federal Medical Center Lexington ("FMC Lexington") and began serving his sentence on November 21, 2019. Defendant moves for release on the basis that there are extraordinary and compelling reasons for release due to his medical condition, age (70), and the current COVID-19 pandemic. (Doc. 26.) Defendant's medical records confirm that Defendant has the following health conditions: asthma requiring an inhaler; hypokalemia; myasthenia gravis; varicose veins of the lower extremities with complications; and spinal stenosis. (Doc. 31 at 15.)

On March 27, 2020, Defendant sent a request to the warden of FMC Lexington seeking consideration for compassionate release or a reduction in sentence based on extraordinary or compelling circumstances. Although the warden is in receipt of that request, it is still under consideration. (Docs. 30, 31.) According to both Defendant and the government, there are cases

of COVID-19 at FMC Lexington. As of July 14, 2020, FMC Lexington has seven inmates testing positive for COVID-19, 7 deaths from COVID-19, and 230 inmate recoveries and 10 staff recoveries. There is no evidence that Defendant has contracted COVID-19. Defendant seeks release on the basis that his age and medical condition put him at an elevated risk of contracting COVID-19.

The government opposes Defendant's motion for release on the basis that the sentencing factors do not weigh in favor of a sentence reduction to a time served sentence.

**II.    Analysis**

**A.  CARES Act**

Defendant moves for a sentence reduction and release pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. Law 116-136 (enacted March 27, 2020) or, alternatively, under 18 U.S.C. § 3582. The Director of the Bureau of Prisons ("BOP") has discretion under § 3624(c)(2) to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). The new CARES Act expands that discretion and provides that "the Director of [BOP] may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under ... [§] 3624(c)(2)." CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020). So, under the CARES Act, the Director may place a prisoner in home confinement prior to the end of a prisoner's sentence. Under the plain language of the statute, however, that discretion is left to the BOP.[1]  *United States v. Read-Forbes*, No. 12-20099-01-KHV, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the

---

[1] According to the record, Defendant's initial request under the CARES Act was denied by the staff at FMC Lexington. (Doc. 26, Exh. 3.)

3

Court lacks jurisdiction to order home detention under this provision." (citation omitted)); *United States v. Boyles*, No. 18-20092-JAR, 2020 WL 1819887, at *2 n.10 (D. Kan. Apr. 10, 2020).

Therefore, the court lacks jurisdiction to grant Defendant's motion under the CARES Act.

### B. Compassionate Release

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), was amended by The First Step Act. Now, a defendant may file his own motion for release if "(1) he has exhausted all administrative rights to appeal the BOP's failure to bring a motion on his behalf, or (2) 30 days have passed since the warden of his facility received his request for the BOP to file a motion on his behalf." *Boyles*, 2020 WL 1819887, at *2; *see also* 18 U.S.C. § 3582(c)(1)(A). This requirement is jurisdictional. *Id.* Based on the record, the court finds that Defendant has satisfied the exhaustion requirement in this case. (*See* Doc. 30.)

Next, the court must determine that (1) "extraordinary and compelling reasons warrant such a reduction;" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) ... and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community." 18 U.S.C. § 3582(c)(1)(A)(i-ii). Defendant seeks compassionate release on the extraordinary and compelling circumstance of having underlying health conditions that make him more susceptible to contracting COVID-19 and at risk for complications as a result. As discussed, Defendant has moderate asthma and also has myasthenia gravis, which is a chronic autoimmune, neuromuscular disease. The Department of Justice has identified risk factors that place inmates at higher risk of complications from COVID-19. An inmate, such as Defendant, who has one of the CDC factors and who is not expected to recover from that condition, is deemed to have established an extraordinary and compelling reason allowing for compassionate release. (Doc. 31 at 13.) The

4

government concedes that Defendant's health conditions qualify as extraordinary and compelling circumstances. (*Id.* at 15.) Also, based on the record before the court, COVID-19 cases continue to rise in FMC Lexington. When Defendant filed his motion, there had been 35 cases at the facility. (Doc. 26 at 4.) Now, there have been more than 200. (Doc. 31 at 14.) Therefore, due to Defendant's asthma and myasthenia gravis, along with his other chronic conditions, Defendant is more susceptible to a higher risk of complications from COVID-19 and the court finds he presents an extraordinary and compelling circumstance.

Finally, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a).[2] Some of the sentencing factors include the nature and circumstances of the offense; the need for the sentence imposed to reflect the seriousness of the offense and afford adequate deterrence; the guideline sentencing range; and the need to avoid unwarranted sentence disparities. *Id.*

Defendant began serving his 36-month sentence approximately 8 months ago. Therefore, Defendant has not even served one-fourth of his imposed sentence. The court also notes that it has already considered Defendant's health when imposing a sentence and that is reflected in his below-guideline-range sentence. The term of incarceration accordingly weighs against an early release. *C.f. United States v. Collins*, No. 15-10188-EFM, 2020 WL 3971391, at *3 (D. Kan. July 14, 2020) (Defendant had already served the majority of her sentence).

The circumstances surrounding Defendant's crime were very serious. Defendant engaged in extensive theft of his clients' property. This was a crime that involved an egregious breach of trust as he stole from the clients that had entrusted him with their funds. Defendant's criminal activity involved more than a dozen clients, including retirees, and amounted to almost one million

---

[2] The court must also find that Defendant is not a danger to the safety of any other person or the community. *United States v. Reece*, No. 16-20088-JAR, 2020 WL 3960436, at *2 (D. Kan. July 13, 2020). The government does not dispute this factor.

dollars.  Releasing Defendant after serving only eight months would "minimize both the impact on the victims and the extent of the fraud."  *United States v. Willis*, 382 F. Supp. 3d 1185, 1189 (D.N.M. 2019) (citing *Rodriguez-Aguirre v. Hudgins*, 739 Fed. App'x 489 (10th Cir. 2018)).

Moreover, the sentence reduction requested by Defendant would undermine the need to "promote respect for the law," "afford adequate deterrence to criminal conduct," and "avoid unwarranted sentence disparities."  18 U.S.C. § 3553(a)(2)(A), (B).  In *United States v. Sample*, the Tenth Circuit held that a court must "sufficiently consider the need to avoid unwarranted sentence disparities" in sentencing offenders for white collar crimes.  901 F.3d 1196, 1201 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1545, 203 L. Ed. 2d 746 (2019).  Defendant's crime was very serious, an enormous breach of trust, and impacted numerous individuals.  Granting a sentence reduction to time served would minimize Defendant's actions and result in sentence disparities.  *See id.*

Accordingly, after considering the factors enumerated in § 3553(a), Defendant's motion to reduce his sentence to time served is denied.

### III.   Conclusion

Defendant's motion for relief pursuant to the CARES Act is DISMISSED WITHOUT PREJUDICE due to lack of jurisdiction.  Defendant's motion for sentence reduction under § 3582 is DENIED.

IT IS SO ORDERED.  Dated this 24th day of July 2020.

    __s/ John W. Broomes_____
    JOHN W. BROOMES
    UNITED STATES DISTRICT JUDGE